**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

|  |  |  |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARIAH N. YOUNG, Individually and in | ) | |
| her capacity as Associate Director and | ) | |
| Associate Dean of Students, | ) | |
| CAITLIN KAY, Individually | ) | |
| and in her capacity as Assistant Dean of | ) | |
| Students, | ) | |
| ALEXANDER VICKERY-HOLLAND, | ) | |
| Individually and in his capacity as Assistant | ) | Civil Action No. 2:23-cv-02280 |
| Dean of Students, | ) | |
| ROBERT "BOB" WILCZINSKI, | ) | |
| Individually and in his capacity as Director | ) | |
| and Associate Dean of Students, | ) | |
| DANIELLE FLEENOR, Individually and | ) | |
| in her capacity as Title IX Coordinator, | ) | |
| CASEY MOORE, Individually and in her | ) | |
| capacity as Assistant Director, | ) | |
| LAURIE ANDREWS, Individually and | ) | |
| in her capacity as Clinical Instructor, | ) | |
| CHRISTOPHER "CHRIS" HOLMES, | ) | |
| Individually and in his capacity as | ) | |
| Associate Director, | ) | |
| DARIN EASTBURN, Individually and in | ) | |
| his capacity as Associate Professor, | ) | |
| MERINDA HENSLEY, Individually and in | ) | |
| her capacity as Associate Professor, | ) | |
| and TWO UNNAMED STUDENT | ) | |
| PANEL MEMBERS, Individually and | ) | |
| in their capacity as Senate Committee | ) | |
| Members, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

1

## COMPLAINT AND REQUEST FOR DECLATORY AND INJUNCTIVE RELIEF

Plaintiff John Doe [1] ("John" or "Plaintiff"), by and through his undersigned attorney,

Brandon Brown, files this Complaint and, in support thereof, alleges as follows:

### NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief and for damages arising out

of a decision by the Defendants to dismiss John from the University of Illinois just two weeks

before final examinations despite explicitly having no jurisdictional authority under Title IX to

take such action.  This action complains of unlawful gender discrimination, unlawful retaliation,

and violations of Title IX of the Education Amendments of 1972 ("Title IX"); violation of

Plaintiff's Due Process rights as afforded to him by the Fourteenth Amendment of the United

States Constitution; and breach of contractual obligations and promises by Defendants. These

violations and breaches resulted in erroneous findings of responsibility and sanctions against

Plaintiff after he was falsely accused of violating University of Illinois' Sexual Misconduct

Policy.

2.      After Plaintiff, a male student, was falsely accused of sexual misconduct,

specifically, touching, in May of 2022, in Nashville, Tennessee, by Jane Roe, a female student.

Defendants, under the guise of Title IX, acting completely outside of the Defendants'

jurisdiction, unfairly subjected John to unfair disciplinary proceedings and investigations, rife

with procedural flaws, impartiality, lack of fundamental fairness, lack of due process and

inherent gender bias, designed to ensure that male students accused of any type of sexual

misconduct or harassment—concepts that do not apply to John's conduct—are found

---

[1] Plaintiff is contemporaneously filing a Motion for Permission to Proceed Under Pseudonym. Plaintiff is entitled to proceed anonymously because of the highly sensitive nature of the disciplinary proceedings against him that form the basis for his Complaint, and the fact that the University is fully aware of his identity and will not be prejudiced in any way. Plaintiff also seeks to maintain the privacy rights of his accuser by requesting permission to identify her anonymously as "Jane Roe."

responsible. The Defendants' unfair processes that unjustifiably resulted in John's dismissal from the University.

3.     The Defendants' numerous procedural failures in John's case included: the absence of jurisdiction of the Panel to hold a hearing or issue a decision on a complaint alleged to have occurred over 350 miles from the University, in a state that does not share a border with Illinois, completely outside of the University's jurisdiction and unrelated to the University or University's functions; failing to adhere to training procedures by not fully investigating Jane Roe's allegations, including but not limited to failing to interview an eyewitness who would have been within ten feet of Jane Roe and John Doe at the time of the alleged occurrence; without explanation, failing to allow either of the two eyewitnesses, who would have been within ten feet of Jane Roe and John Doe at the time of the alleged occurrence, to testify at the hearing, including the only eyewitness interviewed, who happens to completely contradict Jane Roe's allegations; conducting a sham "formal" hearing where the Defendants, including Mariah Young, displayed overt hostility to the Plaintiff and overtly acted as an obstructionist to the Plaintiff and expressly interfered with the Plaintiff's ability to cross-examine the complainant, including but not limited to interrupting, shouting and acting as an advocate for the complainant, in addition to exercising a "sham" neutral authority over the hearing; conducting a sham appeal committee meeting void of substance and process, failing to timely provide John with resources promised to accused students with disabilities; Defendant Caitlin Kay misleading and precluding John from presenting exculpatory evidence at various stages of the investigation; Defendant Kay repeatedly misleading John Doe as to his rights throughout the investigation and proceedings; and further, all Defendants, willfully ignoring the overwhelming amount of exculpatory evidence available to the Panel and/or Committee.

3

4.      The Defendants actions and decisions are harsh, heavy-handed and excessive given that both John Doe and Jane Roe attended the University, without incident, for approximately sixteen months between the date of the allegations (May, 2022) during the 2021-2022 school year and the date the complaint was made (September, 2023) during the 2023-2024 school year. Throughout those sixteen months Jane and John did not have any physical or unlawful contact. In fact, the entire 2022-2023 school year elapsed, from start to finish, without Jane and John having any contact of any kind and without there being any complaints made or filed. In that time John and Jane have not been in the remote vicinity of one another. Further, in the three months of the 2023-2024 school year, since Jane made her complaint, in September of 2023, Jane and John had not had any contact of any kind.  In the nineteen months between the date of the allegation and the date of John's dismissal, there has been no recurrence of any conduct that formed the basis of Jane's complaint, and no reason to believe that there ever will be. Allowing John to remain a student at the University for the remainder of the school year does not present a danger to anyone. Especially considering that John has a clean disciplinary record. That being said, it is overwhelmingly clear and evident, that allowing John to remain at the University, for the few days necessary to complete this current fall semester's final exams (which can be taken online or remotely), occurring within one-two weeks of the dismissal, after John has paid the entire tuition in full and attended school the entire semester, presents no danger to anyone.  Indeed, the timing of the Defendants' sanction, one week before final exams, given John's status as a senior demonstrates that the Defendants' decision is purely punitive and motivated by bias and improper motive as opposed to being driven by concern for the safety and needs of its students.  The only result from the imposition of the Defendants' punitive sanction will be to harm John's future economic prospects, and to destroy his reputation.

5.      The process utilized by Defendants is contained within the University's Student Code, Sexual Misconduct Policy, and Student Disciplinary Procedures. Both on its face and as applied, these policies and procedures violated Plaintiff's Fourteenth Amendment Right to Due Process, his rights under Title IX, and were a material breach of the express and implied contract that existed between Plaintiff and the University of Illinois.

6.      For these reasons, John Doe brings this action to obtain injunctive and declaratory relief and monetary damages based on causes of action under Title IX of the Education Amendment of 1972, Americans with Disabilities Act,  and for violation of the Fourteenth Amendment Right to Due Process, breach of contract and intentional infliction of emotional distress.

## JURISDICTION

7.      This Court has original jurisdiction under Title IX of the Education Act Amendments of 1972, 20 U.S.C. § 1681, et seq., 28 U.S.C. § 1331, the Americans with Disabilities Act, 42 U.S.C. § 12182 et. seq., and jurisdiction over related state common law and statutory claims under the principles of ancillary and/or pendant jurisdiction under 28 U.S.C. § 1367.

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00 and is between citizens of different states.

## VENUE

9.      Venue is appropriate under 28 U.S.C. §1391(b).

## PARTIES

10.     Plaintiff, John Doe, is a natural person and resident of the State of Georgia. At all

relevant times, John was enrolled as a full-time, tuition-paying student at the University of Illinois.

11.     Defendant Mariah Young was at all times relevant to this action an employee of the University of Illinois, serving as Associate Director and Associate Dean of Students and member of the Panel and/or Committee that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. Defendant Young is sued in her individual capacity. Defendant Young is a person under 42 U.S.C §1983 and at all times relevant to this action acted under color of law, the sham pretense color of law.

12.     Defendant Caitlin Kay was at all times relevant to this action an employee of the University of Illinois, serving as Assistant Dean of Students and the lead investigator that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. Defendant Kay is sued in her individual capacity. Defendant Kay is a person under 42 U.S.C §1983 and at all times relevant to this action acted under color of law, the sham pretense color of law.

13.     Defendant Alexander Vickery-Holland was at all times relevant to this action an employee of the University of Illinois, serving as Assistant Dean of Students and the investigator that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. Defendant Vickery-Holland is sued in his individual capacity. Defendant Vickery-Holland is a person under 42 U.S.C §1983 and at all times relevant to this action acted under color of law, the sham pretense color of law.

14.     Defendant Robert "Bob" Wilczinski was at all times relevant to this action an employee of the University of Illinois, serving as Director and Associate Dean of Students and member of the Panel and/or Committee that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. Defendant Wilczinski is sued in his individual capacity. Defendant Wilczinski is a person under 42 U.S.C §1983 and at all times

6

relevant to this action acted under color of law, the sham pretense color of law.

15. Defendant Danielle Fleenor was at all times relevant to this action an employee of the University of Illinois, serving as Title IX Coordinator for the Panel and/or Committee that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. Defendant Fleenor is sued in her individual capacity. Defendant Fleenor is a person under 42 U.S.C §1983 and at all times relevant to this action acted under color of law, the sham pretense color of law.

16. Defendant Casey Moore was at all times relevant to this action an employee of the University of Illinois, serving as a Panel and/or Committee Member that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. Defendant Moore is sued in her individual capacity. Defendant Moore is a person under 42 U.S.C §1983 and at all times relevant to this action acted under color of law, the sham pretense color of law.

17. Defendant Laurie Andrews was at all times relevant to this action an employee of the University of Illinois, serving as a Panel and/or Committee Member that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. Defendant Andrews is sued in her individual capacity. Defendant Andrews is a person under 42 U.S.C §1983 and at all times relevant to this action acted under color of law, the sham pretense color of law.

18. Defendant Christopher Holmes was at all times relevant to this action an employee of the University of Illinois, serving as a Panel and/or Committee Member that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. Defendant Holmes is sued in his individual capacity. Defendant Holmes is a person under 42 U.S.C §1983 and at all times relevant to this action acted under color of law, the sham pretense

color of law.

19.     Defendant Darin Eastburn was at all times relevant to this action an employee of the University of Illinois, serving as a Panel and/or Committee Member that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. Defendant Eastburn is sued in his individual capacity. Defendant Eastburn is a person under 42 U.S.C §1983 and at all times relevant to this action acted under color of law, the sham pretense color of law.

20.     Defendant Merinda Hensley was at all times relevant to this action an employee of the University of Illinois, serving as a Panel and/or Committee Member that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. Defendant Hensley is sued in her individual capacity. Defendant Hensley is a person under 42 U.S.C §1983 and at all times relevant to this action acted under color of law, the sham pretense color of law.

21.     The Defendant Unnamed Student Panel Members, at all times relevant to this action, served as a Panel and/or Committee Member that found Plaintiff responsible for the alleged violations and dismissed Plaintiff from the University of Illinois. The Defendant Unnamed Student Panel Members are sued in their individual capacity. The Defendant Unnamed Student Panel Members are persons under 42 U.S.C §1983 and at all times relevant to this action acted under color of law, the sham pretense color of law.

## FACTUAL ALLEGATIONS

**John Doe's University history and employment status**

22.     John is a senior in the University of Illinois' prestigious Mechanical Engineering program.

23.     According to U.S. News & World Report the University's mechanical engineering

program is ranked as the second most prestigious engineering program in the nation among public universities.

24.     John is currently employed as an engineering intern at Hinetics, located in the University's research park.

25.     At Hinetics, John is working on ground breaking research to enable the next generation of hybrid electric rockets for NASA which will revolutionize air transportation.

26.     The insight into this field of mechanical engineering, working under the leading expert in electrified aircraft propulsion cannot be replicated.

27.     John is in good academic standing, has no prior history or accusations of academic dishonesty or disciplinary infractions of any nature.


**The Title IX Complaint**

28.     On September 13, 2023, Jane Roe filed a Title IX formal complaint, with the Office for Student Conflict Resolution, alleging that she was sexually assaulted in May of 2022 (at the time she did not know the date), in Nashville, TN, while spending the night at a hotel.

29.     The Complaint alleges that Jane Roe and John Doe attended a Sigma Nu formal dinner in Nashville, Tennessee and were lodged overnight in a hotel a Nashville, TN.

30.     The Nashville, Tennessee, Sigma Nu formal dinner was in no way connected to the University of Illinois nor associated with the University of Illinois or any function.

31.     Jane Roe alleged that, after dinner, she voluntarily ingested a Molly (MDMA) that she personally brought from the Illinois to Nashville, TN.

32.     Jane Roe alleged that she received the Molly, free of charge, from a family friend named Tanner (who has not been further identified) and that the Plaintiff John Doe did not provide her with a Molly.

9

33.     Jane Roe alleged that John also ingested a Molly, but that it wasn't the free Molly she received from Tanner, but John's personal Molly.

34.     Jane Roe alleged that she agreed to share a hotel room and hotel bed with John Doe.

35.     Jane Roe alleged that after ingesting the Molly they walked around Nashville and sat on a bench in Nashville for a several hours.

36.     Jane Roe alleged that they consensually kissed twice while sitting on the bench for hours.

37.     Jane Roe alleged that after sitting on the bench for hours they left, stopped for food and then returned to the hotel room in Nashville at about 1:00a.m. in the morning.

38.     Jane Roe alleged that when she returned to the hotel she changed into shorts and a t-shirt and consensually laid down in the bed with John.

39.     Jane Roe alleged that John shared his THC vape pen with her at the hotel room and that they both inhaled hits from the vape pen.

40.     Jane Roe provides that there was another bed in the room but that Jane and John consensually laid in a single bed together.

41.     Jane Roe alleged that in the bed she laid her head on John's shoulder.

42.     Jane Roe alleged her and John were consensually "laying on each other" in the bed, which Jane said was perfectly fine with her.

43.     Jane Roe alleged that her and John were consensually "cuddling" in the bed.

44.     Jane Roe alleged that she consensually allowed John to get closer to her in the bed as she was going to sleep.

45.     Jane alleged as she was going to sleep, John touched her on her stomach, on her legs over her clothes, under her clothes and touched her on her vagina, "just on the outside."

46.     Jane alleged that she cannot confirm whether or not John touched her breasts.

47.     Jane alleged that "at least to her knowledge" she doesn't recall touching John that way.

48.     Jane alleged that she didn't invite John to touch her but also that "I [Jane] didn't shy away.

49.     Jane alleged that there were two other individuals, a male and a female, in the room in the bed across from her and John during this alleged interaction.

50.     Jane alleged that after this interaction, her and John both went to sleep.

51.     Jane alleged that in the morning, there was no indication of this happening.

52.     Jane alleged that in the morning, between 8:00a.m. and 10:00a.m., when they woke up, she acted normal and that John treated her with respect the same way John had always treated her with respect.

53.     Jane alleged that in May of 2022, she sent John a snapchat regarding the overnight stay at the hotel.

54.     Jane alleged that in the snapchat John admitted to touching her under her clothes, but that the touching was consensual. Jane alleged that the in the snapchat John also responded sympathetically to her snapchat.

55.     Jane did not allege that the snapchat stated that John touched her on the outside of her vagina. Nor did Jane allege that the snapchat made reference to a touching of the breasts.

56.     Jane did not allege that in the snapchat she [Jane] made any reference or mention of John touching her on the vagina or breasts.

57.     Jane did not allege that John stated in the snapchat that he touched Jane on the vagina or breast.

58.     Jane alleged that the snapchat stated that John stated that he consensually touched

her under her clothes while they were in the bed, nothing more and that John did not intentionally harm her in any way.

59.     On September 13, 2023, sixteen months and three semesters after the alleged incident in Nashville, Jane Roe filed the above allegations as a Title IX complaint with the Office of Student Conflict Resolution (OSCR) at the University of Illinois.

60.     Based on this allegation, the Defendants, each associated with OCSR,  collectively dismissed the Plaintiff John Doe from the University of Illinois one week before Fall 2023 final exams.

61.     Based on this allegation, the Defendants, each associated with OCSR, collectively dismissed the Plaintiff John Doe from the University of Illinois, despite being fully aware that the allegations fall outside of Title IX and University jurisdiction and lacked corraboration.

**The investigation and discipline imposed by the Defendants is outside of Title IX jurisdiction**

62.     In handling complaints of sexual misconduct, The University of Illinois, and its employees, are bound to follow federal law, including but not limited to Title IX of the Education Amendments of 1972 ("Title IX"), related regulations, and judicial precedent.

63.     Title IX, succinctly states that, "No person in the United States shall, on the basis of sex, be excluded from participation, or be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

64.     Since 1972, regulations have been enacted by the Department of Education to enforce Title IX. These regulations interpret Title IX as prohibiting sexual harassment in certain education programs and activities.

65.     Title IX's regulations apply to faculty, staff, and also to students of qualifying educational institutions that receive financial support from the federal government.

66.     Title IX's regulations require that educational institutions protect its students and employees from harassment, including sexual harassment, and to take steps to remedy any problems and prevent future incidents from occurring.

67.     Title IX itself, and the regulations enforcing it, does not cover the activity or allegations that are the subject of Jane Roe's complaint.

68.     In 2020, the Department of Education issued a 2,033 page set of regulations interpreting how Title IX should be enforced by educational institutions. See https://www2.ed.gov/about/offices/list/ocr/docs/titleix-regs-unofficial.pdf

69.     The regulations, issued in 2020, limited Title IX investigation and enforcement to sexual harassment that occurs either on-campus or in connection directly with an "education program or activity." These regulations are still in effect.

70.     In June 2022, the Department of Education proposed new regulations that would expand Title IX coverage. See https://www.ed.gov/news/press-releases/us-department-education-releases-proposed-changes-title-ix-regulations-invites-public-comment

71.     These new regulations, however, are still in the public comment stage. As recently as October 31, 2023, the Department of Education announced that the planned implementation of these new regulations was delayed, with no new date announced. See article at https://www.k12dive.com/news/final-title-ix-rules-delayed-again/698406/

72.     Jane Roe's complaint and allegations that subjected John Doe to the Defendants' Title IX investigation and discipline, was for conduct that Jane Roe alleged to have occurred in a private hotel in Nashville, Tennessee, at an event unconnected with the University, on May 1-2, 2022. At the time of the alleged conduct, the 2020 regulations were and are in effect. Based on these regulations, the conduct was outside the scope of Title IX.

73.     In June 2022, the Department of Education issued an updated Question-and-

Answer pamphlet, which was meant to clarify and understand the current regulations. See

https://www2.ed.gov/about/offices/list/ocr/docs/202107-qa-titleix.pdf

74.    Questions 9 and 10 from this pamphlet, and the answers provided, explain how the

Panel did not have jurisdiction to rule in this matter. Here are the questions and the answers that

were provided in the pamphlet from the Department of Education:

75.    Question 9: Which settings are covered by the 2020 amendments?

> Answer 9: The 2020 amendments apply to reports of sexual harassment in education
> programs and activities in the United States, including in the following settings:
>> 1. Buildings or other locations that are part of the school's operations,
>> including remote learning platforms;
>> 2. Off-campus settings if the school exercised substantial control over the
>> respondent and the context in which the alleged sexual harassment occurred
>> (e.g., a school field trip to a museum); and
>> 3. Off-campus buildings owned or controlled by a student organization
>> officially recognized by a postsecondary school, such as a building owned
>> by a recognized fraternity or sorority.
>
> For additional information, please see 34 C.F.R. § 106.44(a). For more information
> on how a school can determine whether it has substantial control over the
> respondent and context in an off-campus setting, see Question 10.
>
> The 2020 amendments require that schools provide training to their Title IX
> personnel to "accurately identify situations that require a response under Title IX."
> 27 OCR also encourages schools to include examples of their programs and
> activities in each of the three areas described above in their policies, staff training,
> and student-oriented communications.
>
> Please note that sexual harassment that takes place in settings outside of the United
> States is not covered under the 2020 amendments.
>
> Schools should also note that, under the 2020 amendments, a school may still offer
> "supportive measures to a complainant who reports sexual harassment that occurred
> outside the [school's] education program or activity, and any sexual harassment that
> does occur in an education program or activity must be responded to even if it
> related to, or happens subsequent to, sexual harassment that occurred outside the
> education program or activity."

76.    Question 10: How should a school determine whether it has substantial control

over the respondent and context in an off-campus setting?

Answer 10: The school must make a fact-specific determination. The preamble says that it "may be helpful or useful for a [school] to consider factors applied by Federal courts to determine the scope of a [school's] education program or activity"—such as "whether the [school] funded, promoted, or sponsored the event or circumstance where the alleged harassment occurred"—but also that "no single factor is determinative" in concluding whether the school has substantial control over the respondent and the context in which the reported harassment occurred.

In making this fact-specific determination, the preamble also says:

> A school "must consider whether, for example, a sexual harassment incident between two students that occurs in an off-campus apartment" or house is a "situation over which the [school] exercised substantial control [and], if so, the [school] must respond [to notice] of sexual harassment or allegations of sexual harassment that occurred there."

If an incident of sexual harassment between two students in a private hotel room occurs in a context related to a school-sponsored activity, such as a school field trip or travel with a school athletics team, the school would need to consider whether it exercised substantial control over the context in which the sexual harassment occurred.

The preamble adds that a school may have substantial control over an incident that occurred in a student's home, such as where "a teacher employed by a school visits a student's home ostensibly to give the student a book but in reality to instigate sexual activity with the student."

77.     Jane Roe's Title IX complaint does not allege activity or conduct that occurred in a building operated by the University.

78.     Jane Roe's Title IX complaint does not allege activity or conduct that occurred in an off-campus setting over which the University exercised substantial control.

79.     Jane Roe's Title IX complaint does not allege activity or conduct that occurred in an off-campus building owned or controlled by any student organization affiliated with the University.

80.     The subject of Jane Roe's Title IX complaint alleges conduct or activity that was not within the context of a school-sponsored activity over which the school exercised control.

81.     The absence of jurisdiction by the Panel is reinforced by the University's Student

15

Code of Conduct. According to § 1-301 of the Code:

> (b) … The university discipline system recognizes that not all violations of law affect the interests of the university community, and the discipline system accepts jurisdiction only in those instances in which the university community's interest is substantially affected. On the other hand, the university may take disciplinary action for incidents that violate the university's rules of conduct even though such conduct is not prosecuted in the courts.

82.     Additionally, § 1-301(b) further states that the university discipline system may take action for off-campus activity only if the activity "substantially affect[s] the university community's interest." For additional explanation of the criteria to be used, the Code refers to www.conflictresolution.illinois.edu, sponsored by the Office for Student Conflict Resolution.

83.     Under "Section 1.05: Jurisdiction," the following is stated: "The University has jurisdiction over student conduct that occurs on university property, or in connection with official university programs or functions whether on or off university property." Student disciplinary procedures accessible through www.conflictresolution.illinois.edu.

84.     The activity alleged was not in connection with any official University program or function.

85.     The Defendants have never provided or explained how exactly the Panel and Investigators rationally obtained jurisdiction over alleged conduct complained of by Jane Roe.

86.     The Department of Education regulations, the commentary to the regulations, the Student Code of Conduct, and the student disciplinary procedures make clear, the Defendants, OSCR and/or the Panel have no jurisdiction to hold a Title IX hearing unless the conduct was connected to the University itself.

87.     It is undisputed, that Jane Roe alleges conduct allegedly occurring in Nashville, TN at a private hotel, without any connection to the University or an event under its control.

16

**The Defendants investigation violated the Plaintiff's disability rights**

88.     The Plaintiff John Doe is visually impaired and is registered with the University of Illinois' Division of Disability Resources and Educational Services (hereinafter DRES).

89.     DRES submitted a letter to the Defendants, including Defendant Caitlin Kay, that the Plaintiff requires all information presented in a format that will allow the plaintiff to access the information with text-to-speech software.

90.     Throughout the investigation the OSCR and Defendant Caitlin Kay expressly acknowledged and provided the processes to be followed for requested disability accommodations.

91.     Defendant Caitlin Kay completely failed to follow or adhere to the OSCR disability's processes, ignoring and rebuffing repeated requests by the Plaintiff John Doe for compliance with previously approved disability accommodations.

92.     In ignoring multiple requests for accommodations, Defendant Caitlin Kay, curiously provided accommodations only after the passing of previously imposed deadlines.

93.     As a result, there was no extension provided to the Plaintiff John Doe in order to adequately respond to the interview notes at that stage.

94.     Express assurances, provided by the Defendants, that John's disability rights would be honored proved false and resulted in the Plaintiff John's inability to review and respond fully to the allegations.


**The Defendants misinformed John Doe regarding respondent's rights throughout the investigation**

95.     During the course of the Defendants OSCR investigation, Defendant Caitlin Kay misinformed the Plaintiff John Doe about the John Doe's right to provide the names of witnesses

2:23-cv-02280-CSB-EIL   # 1   Filed: 12/06/23   Page 18 of 29

at anytime during the investigation stage.

96.    At or about the inception of the investigation, in response to John's inquiry to Defendant Kay, requesting a disability accommodation, the Defendant Caitlin Kay instructed and informed John that if witnesses names were not provided at that instant, the right would be forfeited.

97.    According to University Procedures, Section 8(e)(6), the parties can identify all fact witnesses during the entire course of the investigation up until the conclusion of the evidence review. Even after the evidence review, the University procedures permit providing additional evidence or witnesses up to the date of the hearing, if an explanation is provided for why they were not provided earlier. https://conflictresolution.illinois.edu/policies/student-discipline/appendixD/.

**The Defendants failed to adhere to the University's Title IX training procedures**

98.    According to the Title IX training at the University, evidence is collected through the interview of witnesses. (See https://wecare.illinois.edu/docs/UI-TitleIX-Training-2023.pdf at slide 115.)

99.    The interview of all the relevant witnesses also plays a part for the Panel, who are the decision-makers. (See https://wecare.illinois.edu/docs/UI-TitleIX-Training-2023.pdf at slide 143)

100.    According to Jane Roe, it is alleged that there were two witnesses in the Nashville hotel room in the bedroom across from the bed where the alleged touching occurred.

101.    Only one witness in the bedroom was interviewed. The single witness interviewed contradicted Jane Roe allegations. This witness completely rejected Jane Roe's allegations and recollection of what transpired in the hotel room, down to specifics.

102.    Ironically, this witness, without explanation, was not permitted to testify at the hearing.

103.    The one other female eyewitness in the hotel room was not interviewed, contacted or presented. The Defendants, including Defendant Caitlin Kay, intentionally chose not to interview this witness, even though she was made fully aware of the name of the witness.

104.    According to Title IX training, the information from the relevant witnesses helps the decision-maker assess the consistency and corroboration of the evidence. (See https://wecare.illinois.edu/docs/UI-TitleIX-Training-2023.pdf at slide 143)

105.    The Defendants, including Defendant Caitlin Kay, were aware of two additional witnesses, that the Defendants intentionally elected not to interview. One witness, located within feet of Jane Roe, at the time of the alleged conduct.

106.    The other eyewitnesses who were present could have helped the Defendants, panel and/or committee, evaluate the consistency of the allegations made by Jane Roe. Defendant Kay chose not to interview them, even though she was informed of the witnesses' presence by Jane Roe and the one eyewitness interviewed.

107.    The Defendants' decision letter was silent as to why the Defendants ignored the witness that called into the question the veracity of Jane Roe's Title IX complaint.

108.    The Defendants' investigation was incomplete and contrary to university training and resulted in harm to the Plaintiff John Doe and his dismissal from the University.

**The discipline imposed by the University was arbitrary, capricious and excessive in light of the activity alleged**

109.    Under Student Disciplinary Procedures, Section 2.10, if a violation is found, the Panel may choose among the following disciplinary measures:

    a.  A University Reprimand, which indicates that the student's behavior is inappropriate for a member of the academic community.

    b.  A University Censure, which is an official communication that a student's behavior is inappropriate for a member of the academic community.

    c.  Conduct Probation, which is a strong communication that a student is no longer in good disciplinary standing with the academic community, and that, if the student fails to comply with any assigned sanctions or otherwise violates the Student Code while on probation, he or she should expect to be suspended or dismissed from the university.

    d.  Suspension, which shall be imposed upon a student when the appropriate subcommittee of the SCSD determines that the student's relationship with the university must be suspended from the university for a definite period of time.

    e.  Dismissal, which shall be imposed upon a student when the appropriate subcommittee or the SCSD determines that the student's relationship with the university must be terminated.

    f.  Dismissal Held in Abeyance, to be used in appropriate cases where dismissal would be a justifiable formal sanction for the respondent, but strong mitigating circumstances warrant holding the dismissal in abeyance for a defined period of time. During this time period, the student may be required to complete educational sanctions, comply with any behavioral restrictions, and avoid any further violations of the Student Code.

110.    Based on the entire history of the investigation, and the purported "hearings," the Defendants' decision to terminate the Plaintiff John Doe from the University is inappropriate, arbitrary and disproportionate.

111.    Under Section 1.04 of the Student Disciplinary Procedures, "The objective of a system of student discipline is to promote responsible citizenship in a complex organizational or social setting."

112.    The Defendants' decision to dismiss the Plaintiff John Doe from the University, fails to adhere to that objective. It also fails to adequately evaluate the allegations, the circumstances and the five other alternatives that were available to the Defendants other than the harshest most severe penalty available, termination and dismissal.

113.    By the Student Disciplinary Procedures' own terms and objectives, the Defendants' many failures and willful disregarding's notwithstanding, any of the other remedies available would be more appropriate than outright dismissal, including Conduct Probation, Suspension for a definite period of time, or Dismissal Held in Abeyance with conditions.

114.    Nonetheless, the Defendants arbitrarily and without rationale or clearly stated justification or reasoning, unlawfully terminated the Plaintiff John Doe from the University of Illinois one week before final exams.

115.    Plaintiff John Doe filed an appeal pursuant to the Policy, and his appeal was denied on December 1, 2023. The appeal decision was signed by Defendant Robert Wilczynski.

116.    Contrary to the Defendants' policies, the Defendants refused to acknowledge or correct the many errors and erroneous outcome, and willfully disregarded  the Plaintiff's  rights and the express issued raised in the appeal.

## COUNT I
**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.***
**(Against All Defendants)**

117.    Plaintiff realleges each of the foregoing paragraphs as if fully set forth herein.

118.    Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*., provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).

119.    The Defendants' actions, disciplinary investigation and proceedings as detailed above, violated Title IX of the Education Amendment of 1972 and/or subsequent regulations.

120.    The Defendants' actions, disciplinary investigation and proceedings as detailed above further discriminated against the Plaintiff and deprived him of the benefits of the

21

University of Illinois' education program on the basis of sex through its discriminatory, gender-biased implementation of its Policy on Sexual and Discriminatory Harassment and by imposing an excessively punitive, unjust punishment of "dismissal" from the University as a result of that Policy.

121.    The University's Policy on Sexual and Discriminatory Harassment as conceived and implemented by the University was deliberately designed to favor the female accuser and disadvantage the accused male by, among other things, eliminating from the process fundamental procedural safeguards for the accused set forth in Title IX.

122.    As set forth in detail above, the Policy on Sexual and Discriminatory Harassment entailed a procedurally deficient process that was deliberately designed to subject male students to less favorable treatment than female students, because accused students in sexual assault cases are overwhelmingly, if not always, male, and the Policy on its face and as implemented in John's case accorded unequal treatment to them.

123.    The Defendants tasked with overseeing the Title IX process applied in this case had actual knowledge and notice of the jurisdictional limitations  of Title IX and the Defendants' jurisdictional unlawful overreach, in addition to the ongoing violations of Title IX's inherent requirement to provide an "adequate, reliable and impartial investigation" and "due process to both parties involved."

124.    The Defendants had the authority to stop the wrongdoing.  Instead, the Defendants acted willfully and wantonly indifferent to the Plaintiff John Doe and violated his rights under Title IX and his right to Due Process.

125.     Upon information and belief, statistics within the exclusive possession, custody, and control of the Defendants will show that accused students are overwhelmingly male and their accusers are overwhelmingly female.

126.    Upon information and belief, statistics within the Defendants' exclusive possession, custody, and control will show a pattern of intentional discriminatory conduct.

127.    The Defendants' conduct was so severe, pervasive, and objectively offensive that it denied the Plaintiff John Doe equal access to education that Title IX is designed to protect.

128.    The Defendants punished the Plaintiff with its most severe sanctions—dismissal from the University of Illinois— acting completely in excess of the jurisdiction of Title IX, with insufficient independently contradicted evidence and as a result of a process that contains virtually no procedural safeguards for accused male students and is permeated with gender bias.

129.    As a direct, proximate, and foreseeable consequence of the Defendants' Title IX violations, the Plaintiff John Doe has been stripped of his ability to complete his education one week before final exams in his senior year, for a minimum of one school year, and his academic and career prospects, earning potential, and reputation have been severely harmed.

130.    As a direct, proximate, and foreseeable consequence of the Defendants' willful and wanton, Title IX violations, the Plaintiff John Doe has been stripped of his ability to remain gainfully employed at for one school year, irreparably harming his immediate and future earning potential and his reputation has been severely harmed.

131.    As a direct, proximate, and foreseeable consequence of the Defendants' Title IX violations, the Plaintiff has sustained significant damages, including but not limited to, severe emotional distress, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational and professional opportunities, loss of future career prospects, and other direct and consequential damages.

132.    As a result of the foregoing, the Plaintiff John Doe is entitled to injunctive relief and damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

23

professional opportunities, loss of future career prospects, and other direct and consequential

damages.

## COUNT II
### Discrimination in a Public Accommodation in Violation of the ADA
### 42 U.S.C. § 12182, *et seq.*
### (Against All Defendants)

133.    Plaintiff realleges paragraphs 1-116 as if fully set forth herein.

134.    The Defendants' actions and practices described above constitute unlawful

discrimination under 42 U.S.C. § 12182(a) and (b), in that Defendants discriminated against

Plaintiff on the basis of Plaintiff's perceived and/or actual disability, with regard to the full and

equal enjoyment of University's goods, services, facilities, privileges, advantages, or

accommodations. Defendants' actions and practices described above also constitute unlawful

discrimination under the various subparts of 42 U.S.C. § 12182(b)(1)(A), and § 12182(b)(2)(A).

135.    The Defendants treated Plaintiff unequally compared to students that do not have a

disability. The Defendant also used criteria and methods of administration that have the effect of

subjecting Plaintiff to discrimination on the basis of his perceived disability, and that have the

purpose or effect of defeating or substantially impairing the accomplishment of the objective of

its program with respect to individuals with disabilities and in particular with respect to Plaintiff.

136.    The Defendants have failed to provide reasonable accommodations under the

Americans with Disabilities Act that would enable Plaintiff meaningful access to University

services, programs or activities.

137.    As a result of the Defendants' willful and wanton violations of the Americans with

Disabilities Act, the Plaintiff was damaged, as detailed and thus the Plaintiff is entitled to

injunctive relief and damages in an amount to be determined at trial, plus prejudgment interest

and attorneys' fees and costs.

24

<u>**COUNT III**</u>
**Violation of the Due Process Clause of the 14th Amendment**
**42 U.S.C. § 1983**
**(Against All Defendants)**

138.   Plaintiff realleges each of the foregoing paragraphs as if fully set forth herein.

139.   The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law."

140.   The Plaintiff has a protected liberty interest in pursuing his education as well as in future educational and employment opportunities and occupational liberty, of which he cannot be deprived without due process.

141.   The Plaintiff's constitutionally protected property and liberty interest in his education, which the Plaintiff relies upon for his current employment, are to be free from arbitrary dismissal, arising from the policies, courses of conduct, practices, and process set forth and executed by the Defendants.

142.   The Fourteenth Amendment due process protections govern the higher education disciplinary proceedings including that of the Office of Student Conflict Resolution as presided over by the Defendants.

143.   The Plaintiff is entitled to due process commensurate with the seriousness of the allegations and the potential discipline, sanctions, and repercussions the Plaintiff was facing.

144.   The Plaintiff was entitled to fundamentally fair process and procedures to determine whether he was responsible for the alleged sexual misconduct involving Jane Roe.

145.   The Defendants, acting in concert, knowingly, willfully, and wantonly deprived the Plaintiff of the minimal requirements of procedural and fundamental fairness.

146.   The Defendants deprived Plaintiff of his liberty and property interests without affording the Plaintiff basic due process, including but not limited to, his right to a fair and

impartial adjudication.

147.    As a result of the Defendants' willful and wanton, due process violations, the Plaintiff was damaged, as detailed above and thus the Plaintiff is entitled to injunctive relief and damages in an amount to be determined at trial, plus prejudgment interest and attorneys' fees and costs.

**COUNT IV**
**Breach of Contract**
**(Against All Defendants)**

148.    Plaintiff realleges each of the foregoing paragraphs as if fully set forth herein.

149.    At all relevant times, a contractual relationship existed between Plaintiff and University of Illinois.

150.    The promises contained in University of Illinois' Student Code and Policies are legally binding obligations.

151.    The Defendants at all relevant times had a duty not to interfere with the Plaintiff legally binding contractual relationship.

152.    The Defendants at all relevant times had a duty not to proximately cause a breach of the legally binding contractual relationship between the Plaintiff and the University of Illinois.

153.    The Defendants were required to act in accordance with the aforementioned policies and procedures in addressing Jane Roe's allegations against John Doe, and in conducting its investigation, Panel Hearing, and Appellate review.

154.    For all the reasons set forth above, the Defendants have proximately caused a material breach of John Doe's contract by failing to comply with the aforementioned policies and procedures in the course of its investigation and adjudication of John Doe's case, and by arbitrarily disregarding their duty to the Plaintiff John Doe throughout the proceedings.

155.    Additionally, the Defendants violated the covenant of good faith and fair dealing

by acting arbitrarily, capriciously, and in bad faith throughout John Doe's disciplinary review, by acting in a manner inconsistent with John's reasonable expectations of a fair and impartial process, by depriving him of the benefit of his bargained-for education, and by meting out a grossly disproportionate sanction of dismissal from the University.

156.    As a direct, proximate, and foreseeable consequence of Defendants' willful and wanton actions, Plaintiff sustained significant damages, including, without limitation, damage to reputation, loss of educational opportunities, loss of career opportunities, loss of future career prospects, economic injuries, and other direct and consequential damages.

157.    As a result of the foregoing, the Plaintiff was damaged, as detailed above and thus the Plaintiff is entitled to injunctive relief and damages in an amount to be determined at trial, costs and disbursements, plus prejudgment interest and attorneys' fees and costs.

## COUNT V
### Declaratory Judgment and Injunctive Relief
### (Against All Defendants)

158.    Plaintiff realleges each of the foregoing paragraphs as if fully set forth herein.

159.    This Court has original diversity jurisdiction over this claim pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

160.    As a result of the foregoing, there exists a justiciable controversy between the parties with respect to whether the Defendants have violated the Plaintiff's rights and caused of a breach of the Plaintiff's contractual rights.

161.    By reason of the foregoing, pursuant to 28 U.S.C. § 2201, Plaintiff John Doe requests a declaration that the Defendants caused a breach of the Plaintiff's contractual rights and subjected the Plaintiff to an invalid process and sanction, and that he is entitled to redress that will make him whole, including but not limited to his immediate reinstatement as a full-time

student in good standing, and all rights, privileges, and access to campus facilities and events afforded to students at the University of Illinois.

162.   Plaintiff John Doe further requests that this Court issue a permanent injunction: (a) reversing the findings and sanction against John; (b) ordering the University to expunge the findings of responsibility and sanction of dismissal from John's educational record at the University, and to publicly so state; (c) ordering the University to reinstate John as a matriculating student and to accord him all of the rights, privileges, and access to campus facilities and events of a fully enrolled student; and (d) ordering the University to provide a Dean's Statement that shall be made available to third parties at John's request (such as educational institutions and prospective employers) certifying that the findings and sanction have been reversed and expunged from John Doe's educational record.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff John Doe respectfully requests that this Honorable Court:

a.   Declare that the Defendants caused a breach of the Plaintiff's contractual rights with the University of Illinois;

b.   Grant injunctive relief ordering the Defendants to reverse and expunge its findings of responsibility and sanctions from John Doe's educational record;

c.   Grant injunctive relief ordering the Defendants to reinstate John Doe as a student, and to accord him all of the rights, privileges and access to campus facilities and events of a fully enrolled student in good standing;

d.   Grant injunctive relief ordering the Defendants to provide a Dean's Statement that shall be made available to third parties upon John's request (such as educational institutions and prospective employers) certifying that the Defendants have reversed and expunged the findings and sanction;

e.   Award John Doe compensatory damages in an amount to be determined at trial, including without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of education and professional opportunities, loss of future career prospects, and other direct and consequential damages;

f.  Award prejudgment interest;

g.  Award attorney fees and costs pursuant to statutory or common law doctrines providing for such award;

h.  Grant such other and further relief that the Court deems proper, equitable and just.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully Submitted,

**JOHN DOE**

By:   /s/ Brandon Brown

*One of Plaintiff's Attorneys*

THE BROWN LAW LTD.
4455 S King Drive
Suite 100A
Chicago, IL 60653
T: 773-624-8366
F: 773-624-8365
E: bbrown@thebrownlaw.com